# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | | |
|---|---|---|
| **DOUGLAS W. WILLIAMS,** | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| vs. | ) | Case No. 05-0128-CV-W-GAF |
| | ) | Crim. No. 03-00052-01-CR-W-GAF |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| Respondent. | ) | |

## ORDER

On February 25, 2003, Williams was indicted on two counts: Count One was conspiring to manufacture and distribute a mixture or substance containing a detectable amount of 500 grams or more, contrary to the provisions of 21 U.S.C. § 841(a)(1) and (b)(1)(A), all in violation of 21 U.S.C. § 846, and Count Fourteen, aiding and abetting others, Williams did knowingly and intentionally attempt to manufacture methamphetamine, in an amount of 50 grams or more, contrary to the provisions of 21 U.S.C. § 841(a)(1) and (b)(1)(A), all in violation of 21 U.S.C. § 846 and 18 U.S.C. § 2. Count One carried a statutory sentencing range of not less than ten years nor more than life imprisonment.

On August 13, 2003, Williams entered a plea of guilty to the conspiracy charged in Count One if the indictment. A Rule 11 plea agreement was tendered to the Court at that time. Williams and his counsel signed the document.[1]

At Williams' plea hearing, the court clerk administered the oath. The Court warned Williams that any false answers to questions asked of him during the plea hearing could be used against him in a

---

[1] Upon review of the record and applicable authority herein, respondent's position is found to be controlling. Much of respondent's brief is adopted without quotation noted.

prosecution for perjury or false statement. Thereafter, the Court asked Williams if he had signed, read, reviewed with his attorney, and understood the terms of the plea agreement. Williams acknowledged that he signed, read, discussed with his attorney, and understood the terms of the plea agreement. Williams specifically acknowledged that he understood the provisions of the plea agreement. Williams affirmed that he had taken sufficient time to discuss his case and its consequences with counsel, that counsel had answered his questions, and that he was satisfied with counsel's representation.

Williams' plea agreement contained the following provision:

The defendant agrees to plead guilty to Count One of the Indictment charging a violation of Title 21, United States Code, Section 846, that is, Conspiracy to Manufacture and Distribute Methamphetamine in an Amount of Five-Hundred (500) Grams or More. By entering into this Plea Agreement, the defendant admits that he knowingly committed this offense and is guilty of this offense.

During the plea hearing, Williams affirmed his understanding of the charges against him. Williams further specifically acknowledged that the government's burden of proof included proof that the conspiracy involved 500 grams or more of methamphetamine. Finally, Williams admitted that he conspired to manufacture and distribute 500 grams or more of methamphetamine.

This plea agreement also carried the following significant provision:

12. The defendant agrees not to appeal or otherwise challenge the constitutionality or legality of the Sentencing Guidelines. The defendant understands and acknowledges that his sentence will be determined and imposed pursuant to those Sentencing Guidelines. Defendant is aware that a sentence imposed under the Sentencing Guidelines does not provide for parole. *The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum established for the offense and expressly waives the right to appeal his sentence, directly or collaterally, on any ground except for an upward departure by the sentencing judge, a sentence in excess of the statutory maximum, or sentence in violation of law apart from the Sentencing Guidelines.* However, if the government

2

> exercises its right to appeal the sentence imposed as authorized by 18 U.S.C. §
> 3742(b), the defendant is released from this waiver and may appeal his
> sentence as authorized by 18 U.S.C. § 3742(a).

In his plea agreement, Williams admitted the following facts:

> The defendant agreed with Darcy E. Harris, and others to manufacture and distribute in excess of 500 grams of methamphetamine in the Kansas City metropolitan area between October 1, 1999, and February 25, 2003. The defendant supplied precursor chemicals to several members of the conspiracy who manufactured methamphetamine with those chemicals. The defendant also distributed methamphetamine to members of the conspiracy.

Twice during his plea hearing, Williams specifically affirmed and acknowledged his guilt.

In the plea agreement, the government agreed not to file any additional charges against Williams arising out of present offenses or investigation in the Western District of Missouri, to dismiss Count Fourteen of the indictment, and to dismiss the indictment in *United States .v Williams*, 03-00068-01-CR-W-GAF, all at the time of sentencing.

On October 28, 2003, the pre-sentence investigation report was completed. The pre-sentence investigation report concluded that Williams' Sentencing Guideline range was 108 to 135 months based upon a total offense level of 29 and a criminal history category of III. Williams raised objections to the pre-sentence investigation report that did not require any rulings from the Court.

On February 23, 2004, a sentencing hearing was held before the Court. There were no factual disputes at the sentencing hearing. The Court noted that Williams had authored a letter to him regarding sentencing.

The Court applied the Sentencing Guidelines as reflected in the pre-sentence investigation report. Thereafter, the Court sentenced Williams to 120 months of imprisonment - the minimum

sentence available. Williams' sentence was below the statutory maximum sentence and within the undisputed Guideline range. Count Fourteen of the indictment and the indictment in *United States v. Williams*, 03-00068-01-CR-W-GAF were both dismissed. Williams did not pursue an appeal and his conviction was final on March 4, 2004.

On February 16, 2005, Williams filed his motion to vacate, set aside or correct sentence. Williams raised five instances of alleged ineffective assistance of counsel: (1) that counsel did not spend sufficient time with Williams concerning his case; that counsel never conferred with Williams or his family before taking action, and that counsel often misstated facts pertaining to the case; (2) that he had no intention of pleading guilty to a charge carrying a statutory quantity of 500 grams of methamphetamine; (3) that he was not given the opportunity to complete a proffer; (4) that he only had ten minutes to read the twelve page plea agreement; and (5) that counsel did not discuss sentencing issues until 15 minutes before the sentencing hearing.

## Ineffective Assistance of Counsel Claims

The standard for ineffective assistance of counsel is well established:

A claim of ineffective assistance of counsel under § 2255 must be scrutinized under the two-part test of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under *Strickland*, in order to prevail on a claim of ineffective assistance of counsel, a convicted defendant must prove both that his counsel's representation was deficient and that the deficient performance prejudiced the defendant's case. The first part of the test is met when the defendant shows that counsel "failed to exercise the customary skills and diligence that a reasonably competent attorney would [have] exhibit[ed] under similar circumstances. The second part is met when the defendant shows that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

*Cheek v. United States*, 858 F.2d 1330, 1336 (8th Cir. 1988) (citations omitted).

4

The failure to establish "prejudice" is dispositive of a § 2255 claim, and the court does not have to then address the reasonableness of the attorney's performance. *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996); *see also United States v. Montanye*, 77 F.3d 226, 230 (8th Cir. 1996); *Sanders v. Trickey*, 875 F.2d 205, 222 n.8 (8th Cir. 1989).

Williams cannot show that his attorney's representation caused prejudice. Williams' primary objection to the representation appears to be dissatisfaction with his sentence. In fact, attorney Geary Jaco's representation allowed Williams to avoid a substantially more punitive sentence. If Williams had gone to trial and been convicted in two cases, he could have received mandatory life sentences on each. Count One of the indictment carried a mandatory minimum sentence of 10 years. While significant, Williams' sentence of 120 months does not begin to approach what he could have received absent Mr. Jaco's effective representation.

Williams' claim as to the representation provided by counsel fails both prongs of the *Strickland* test. Williams fails the first prong because the amount of time counsel spends with a client before proceedings is not in itself conclusive as to whether the client received adequate representation. *See United States v. Reed*, 756 F.2d 654 (8th Cir. 1985) (holding it did not constitute ineffective assistance of counsel where attorney only met with defendant two hours the day before defendant's trial). Significantly, Williams makes no claim that his decision to enter into his plead agreement was not freely and voluntarily made. Furthermore, Williams does not allege what standard of professional conduct that counsel deviated from in representing him.

Williams 'claim fails the second prong of the *Strickland* test because he does not explain how or allege that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of

5

the proceeding would have been different." *Cheek v. United States*, 858 F.2d at 1336 (quoting *Strickland*).

Williams acknowledged his "complete satisfaction with the representation and advice received from his undersigned counsel" in his plea agreement. Moreover, Williams' present assertion that he did not have sufficient time to consider and understand the plea agreement is entirely negated by his sworn statements at his August 13, 2003 plea hearing. Williams affirmed that his attorney had done everything he had asked his attorney to do, had done nothing that Williams did not want his attorney to do, and that he had no question, concern, or complaint in relation to his attorney's representation. Williams affirmed that he had an opportunity to read the plead agreement and discuss the terms of the plea agreement with his counsel. Moreover, Williams affirmed his understanding of all of the terms of the plea agreement.

Williams neither claims nor shows any prejudice that resulted from counsel's representation. Williams' sworn testimony directly contradicts this claim.

Williams further claims he did not intend to plead guilty to methamphetamine charges involving 500 grams of methamphetamine. Again, this claim contradicts Williams' sworn testimony and other supporting evidence that Williams knew and understood that he was pleading guilty to conspiracy charges involving 500 grams of methamphetamine or more.

Williams' plea agreement contained the following provision:

The defendant agrees to plead guilty to Count One of the Indictment charging a violation of Title 21, United States Code, Section 846, that is, Conspiracy to Manufacture and Distribute Methamphetamine in an Amount of Five-Hundred (500) Grams of More. By entering into this Plea Agreement, the defendant admits that he knowingly committed this offense and is guilty of this offense.

6

Moreover, Williams agreed the facts constituting his offense were as follows:

> The defendant agreed with Darcy E. Harris, and others to manufacture an distribute in excess of 500 grams of methamphetamine in the Kansas City metropolitan area between October 1, 1999, and February 25, 2003. The defendant supplied precursor chemicals to several members of the conspiracy who manufactured methamphetamine with those chemicals. The defendant also distributed methamphetamine to members of the conspiracy.

Furthermore, during the plea hearing, Williams affirmed his understanding of the charges against him. He specifically acknowledged that the government's burden of proof included proof that the conspiracy involved 500 grams or more of methamphetamine. Finally, Williams admitted that he conspired to manufacture and distribute 500 grams or more of methamphetamine.

The record reflects that Williams voluntarily and knowingly pled guilty pursuant to a plea agreement he understood. Williams has no basis to contest the amount of methamphetamine involved in his case.

Williams' claim that he was not given an opportunity to provide a proffer is also without merit. The option of filing a motion for downward departure is within the discretion of the government. The government represents that the information Williams provided was not full and complete, and, therefore, the government did not file a downward departure motion.

Williams also claims to not have fully understood the terms and consequences of his plea agreement. However, the transcript of his change of plea and sentencing proceedings clearly shows Williams stated to the Court under oath that he had an opportunity to read the plea agreement and discuss the terms of it with his counsel. Williams further testified that he fully understood the terms of the plea agreement. The Court found Williams' guilty plea was "made knowingly and voluntarily" and

7

that Williams was fully informed and aware of the charges against him and the consequences of entering into the plea of guilty. Williams' present claim that he did not understand the consequences of his plea or the terms of his agreement is refuted by the record.

Finally, Williams' claim that counsel only met with him 15 minutes to discuss sentencing issues does not constitute ineffective assistance of counsel. As with Williams' general claim of ineffective assistance of counsel, the time period counsel meets with a defendant by itself is not conclusive as to whether the counsel adequately represented a defendant's interests, and, therefore, fails the first prong of the *Strickland* test. *See United States v. Reed*, 756 F.2d 654.

Williams fails to meet the requirements of the *Strickland* test on this claim, as with his other claims. He fails the first part because he cannot show or even allege how his counsel failed to provide the representation of a reasonably competent attorney. *Cheek v. United States*, 858 F.2d at 1336 (quoting *Strickland*). Williams also fails to show or allege how the result of his case would have been different but for Mr. Jaco's ineffective representation. To the contrary, the evidence shows that Williams' counsel effectively represented Williams' interests at sentencing. Williams' counsel obtained for him a sentence of 120 months imprisonment, which is the minimum statutory sentence allowable for the crime to which Williams pled guilty. He was not eligible for a lower sentence.

WHEREFORE, for the reasons stated herein, Williams' § 2255 motion is denied.

/s/ Gary A. Fenner
GARY A. FENNER, JUDGE
United States District Court

DATED: August 3, 2005